FILED

SEP 25 2015

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

*****************************************************************************

| | |
|---|---|
| AT&T CORP., | CIV 14-4150 |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND STAYING CASE |
| OGLALA SIOUX TRIBE UTILITY COMMISSION; JOE RED CLOUD; IVAN BETTELYOUN; DAVID "Terry" MILLS; and ARLENE CATCHES THE ENEMY, in their official capacities as Commissioners; OGLALA SIOUX TRIBAL COURT; and MARY WYNNE, in her official capacity as Chief Judge of the Oglala Sioux Tribal Court, | |
| Defendants. | |

*****************************************************************************

Pending before the Court is Plaintiff AT&T Corp.'s (AT&T) action for declaratory judgment against Defendants Oglala Sioux Tribe Utility Commission (OSTUC), OSTUC's commissioners, and Chief Judge of the Oglala Sioux Tribal Court, Mary Wynne (Collectively, "Defendants" or the "Tribe"). Defendants have moved to dismiss for a lack of subject matter jurisdiction. Subsequent to the Defendants moving to dismiss for lack of subject matter jurisdiction, the Plaintiff moved to amend the Complaint. The Amended Complaint added Count 1 which is again requesting the declaratory and injunctive relief but this time with respect to the Final Utility Order entered by the Oglala Sioux Tribe Utility Commission. The Amended Complaint also adds additional facts providing more detail than was alleged in the initial Complaint. Defendants have not separately responded to the Amended Complaint but the Defendants' initial Motion to Dismiss for lack of subject matter jurisdiction applies to both Count 1 and Count 2 of the Amended Complaint in that both Counts request declaratory and injunctive relief against the Defendants. Defendants have not filed a separate motion to dismiss regarding the new count, which is Count 1 in the Amended Complaint but Defendants did object to

the new count in the Amended Complaint in Defendants' Opposition to Plaintiff's Motion to Amend Complaint. So that this matter may move ahead to ultimate resolution, the Court is ruling on both Count 1 and 2 of the First Amended Complaint. For the following reasons, the Motion will be granted in part and denied in part. In addition, the federal action will be stayed pending AT&T exhausting its available tribal remedies.

## BACKGROUND

AT&T is a telecommunications provider incorporated in New York with its principal place of business in New Jersey. AT&T is not a member of the Oglala Sioux Tribe. In its capacity as a telecommunications service, AT&T acts as a long distance carrier, also referred to as an interexchange carrier (IXC).

The OSTUC was formally established in 2013 as a subdivision of the Oglala Sioux Tribe. The OSTUC is responsible for the exercise of tribal regulatory authority over all utility systems on the Pine Ridge Indian Reservation. Defendants Joe Red Cloud, Ivan Bettelyoun, David "Terry" Mills, and Arlene Catches The Enemy are commissioners of the OSTUC and are named as defendants in their official capacities. Defendant Mary Wynne is the Chief Judge of the Oglala Sioux Tribal Court and is also named as a defendant in her official capacity.

As an IXC, AT&T delivers long distance calls from one local area to another. When a long distance customer places an interstate call, the customer's long distance carrier generally transports the call to the local telephone company, referred to as a local exchange carrier (LEC). The LEC then carries the call the remaining distance to the called party. The LEC then bills the interstate "access charges" to the IXC for completing the call on the LEC's network. In order for these access charges to be valid, a federal tariff must be filed by the LEC with the Federal Communications Commission (FCC).

Relevant to this dispute is an Oglala Sioux Reservation LEC, Native American Telecom-Pine Ridge (NAT-PR), which has been providing telephone and broadband services on the Pine Ridge

reservation since 2009. Doc. 1-1 at 4. As a result of NAT-PR's services on the Reservation, it has billed AT&T access charges under NAT-PR's federal tariff with the FCC. AT&T has refused to pay the charges and filed an informal complaint with the FCC on August 21, 2014. In its informal complaint, AT&T alleges that NAT-PR's access charges are "inconsistent with federal law, that NAT-PR has not provided services consistent with its own federal tariff, and that NAT[-PR]'s charges are unjust and unreasonable in violation of federal law." First Amended Complaint at 5. The FCC action is currently pending.

On September 9, 2014, the OSTUC adopted an Order U-1-2014[1], creating "new requirements governing the operation of Utility providers on the Pine Ridge reservation." *See* Doc. 1-1 at 2. These new requirements included: a registration requirement for all utilities; an annual reporting requirement and payment of utility fee; a process for handling consumer complaints; guidance for imposing taxes, fees, and surcharges on consumers; and initiation and termination of service requirements. All utilities, which includes AT&T, "must comply with [the] applicable requirements, . . . , or be subject to penalties by [the OSTUC] consistent with the Tribe Utilities Code." *Id.*

On September 24, 2014, the OSTUC, on its own motion, issued a Final Order (the "Order") that "addresses [] an issue of importance to the administration and application of rules and orders in a non-discriminatory manner on the Pine Ridge reservation." *Id.* at 1. The Order was the result of an August 20, 2014 inquiry by the OSTUC into the question of "whether any carrier serving Pine Ridge reservation has been subject to unreasonable discrimination." *Id.* While the Order purports to apply to utilities such as AT&T generally, it centers on the dispute between AT&T and NAT-PR. In the Order, the OSTUC found that NAT-PR established lawful tariffs governing IXC traffic and that the tariffs are consistent with FCC regulations. Ultimately, the OSTUC found that "[i]t is unlawful for these carriers to unilaterally withhold payment for services provided by NAT-PR while continuing to enjoy the benefits of such services." *Id.* at 7. The Order concluded by detailing the process through which services such as AT&T may bring future challenges to the OSTUC.

---

[1] The Court has not been provided a copy of this September 9, 2014 Order.

3

On October 23, 2014, the OSTUC issued a "notice of liability" purporting to impose a fine on utility providers that had not registered with the OSTUC in the amount of $1,000 per day. Doc. 29-2 at 1.This notice named ten utilities, including AT&T. First Amended Complaint at 3. Thereafter, on December 19, 2014, the OSTUC filed a complaint against AT&T and eight other defendants in tribal court. *See* Doc. 29-3 at 1. In its complaint, the OSTUC asked the tribal court for an "Order enforcing the Notice of Liability and the fines imposed on the Defendant utility providers." *Id.*

## DISCUSSION

"A federal court must have jurisdiction over a matter before it grants [] relief." *Sprint Communications Co. v. Wynne*, No. 4:15–CV–04051–KES, 2015 WL 4644983, at *2 (D.S.D. Aug. 4, 2015) (citing *Bruce H. Lien Co. v. Three Affiliated Tribes*, 93 F.3d 1412, 1422 (8th Cir. 1996)). "'Whether a trib[e] [] has adjudicative authority over nonmembers is a federal question.'" *Id.* (quoting *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008)). Therefore, this Court has jurisdiction over AT&T's claim for declaratory judgment.

Declaratory judgment provides "means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so." § 2751 Purpose of Declaratory Judgments, 10B Fed. Prac. & Proc. Civ. § 2751 (3d ed.). *See* 28 U.S.C. § 2201. In order to comport with Article III, Section 2 of the Constitution, the Declaratory Judgment Act may be invoked only in "a case of actual controversy." 28 U.S.C. § 2201. *See County of Mille Lacs v. Benjamin*, 361 F.3d 460, 463 (8th Cir. 2004) (quoting *Carson v. Pierce*, 719 F.2d 931, 933 (8th Cir. 1983)) ("'The controversy requirement of the Declaratory Judgment Act is synonymous with that of Article III of the Constitution.'"). What constitutes a case of actual controversy for purposes of a declaratory judgment is a question of degree: whether the controversy "is of sufficient immediacy and reality to permit . . ." granting the remedy. Purpose of Declaratory Judgments, *supra*, at § 2751. Therefore, whether facts before a court present an actual controversy must be assessed on a case-by-case basis. *Id.*

4

In the present case, the OSTUC issued an Order on September 24, 2014 purporting to hold services such as AT&T to the requirements the Tribe Utilities Code. *See* Doc. 1-1 at 2. According to the Order, doing business on the Reservation means that "all of these carriers, regardless of whether they have their own facilities on the Pine Ridge reservation or use the facilities of another carrier, are subject to the jurisdiction and authority of the Oglala Sioux Tribe and this Commission." *Id.* Based on the tribal regulations, the Tribe has imposed fines on AT&T and attempts to exercise regulatory authority over it. AT&T has neither remitted the fines nor complied with the tribal regulations. Instead, AT&T insists that the Tribe and the OSTUC have no jurisdiction, generally, to regulate AT&T's conduct. The Court finds these facts support a sufficiently concrete case or controversy. "[T]o satisfy the actual controversy requirement of the Declaratory Judgment Act, there must exist 'substantial controversy between the parties having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment.'" *Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1050 (8th Cir. 1996) (quoting *Caldwell v. Gurley Refining Co.*, 755 F.2d 645, 649 (8th Cir. 1985)). Here, as noted previously, the Tribe and the OSTUC purport to have jurisdiction over AT&T to hold it to tribal regulations. As part of those regulations, AT&T is to register as a utility and pay various fees, which have been assessed against AT&T and not paid. Currently pending is an action in tribal court related to that nonpayment. The parties' rights are therefore sufficiently adverse and concrete to support declaratory action. The Court will therefore turn to whether AT&T is entitled to declaratory judgment against the Tribe.

## I. DOES 47 U.S.C. § 207 PRECLUDE THIS COURT'S JURISDICTION?

In its motion to dismiss, the Tribe argues that this Court lacks jurisdiction to grant AT&T's request for declaratory judgment by operation of 47 U.S.C. § 207 of the Federal Communications Act (FCA). That section reads in whole,

> Any person claiming to be damaged by any common carrier subject to the provisions of this chapter may either make complaint to the Commission as hereinafter provided for, or may bring suit for the recovery of the damages for which such common carrier may be liable under the provisions of this chapter, in any district court of the United States of competent jurisdiction; but such person shall not have the right to pursue both such remedies.

5

47 U.S.C. § 207. Based on a plain reading of the statute, the Tribe argues that AT&T's complaint before the FCC forecloses on maintaining a separate action before this Court. Insofar as Defendants' motion centers on AT&T's dispute with NAT-PR and its federal tariff, Defendants are correct. *See Sprint Communications Co., L.P. v. Native American Telecom, LLC*, No. CIV. 10-4110-KES, 2010 WL 4973319, at *4 (D.S.D. Dec. 1, 2010) ("Congress has expressed a preference for a federal forum both by preempting all non-federal substantive law claims regarding *interstate tariffs* and by limiting the forum where such a claim can be brought to a federal forum.") (emphasis added); *AT&T Corp. v. Coeur d'Alene Tribe*, 295 F.3d 899, 905 (9th Cir. 2002) ("By its express language, § 207 establishes concurrent jurisdiction in the FCC and federal district courts only, leaving no room for adjudication in any other forum – be it state, tribal, or otherwise."). Thus, when a complainant such as AT&T seeks to challenge interstate tariffs imposed by a common carrier, the complainant may file an action with either the FCC or United States District Court, but not both. The Court agrees that any dispute with NAT-PR is already before the FCC and this Court's jurisdiction to that extent is, therefore, precluded.

AT&T asserts, however, that 47 U.S.C. § 207 is inapplicable because the OSTUC is not a common carrier and emphasizes that the OSTUC is not a party to the FCC action. "'[C]ommon carriers'[2] are entities that must provide [transmission] service[s] to the public without discrimination and are heavily regulated by the FCC." *Johnson v. American Towers, LLC*, 781 F.3d 693, 702 (4th Cir. 2015) (quoting *Pinney v. Nokia, Inc.*, 402 F.3d 430, 450 (4th Cir. 2005)) (first alteration added). The Court agrees that OSTUC is not a common carrier and an action such as this is, thus, not barred by operation of 47 U.S.C. § 207. The facts presented are distinguishable from *Native American Telecom*. There, the court held that 47 U.S.C. § 207 precluded the Crow Creek Sioux Tribal Court's jurisdiction over an action by Sprint Communications against Native American Telecom (NAT). In its action, Sprint sought a preliminary injunction against NAT's imposition of two access service

---

[2] 47 U.S.C. § 153 defines "common carrier" as,
    any person engaged as a common carrier for hire, in interstate or foreign communication by wire or radio or interstate or foreign radio transmission of energy, except where reference is made to common carriers not subject to this chapter; but a person engaged in radio broadcasting shall not, insofar as such person is so engaged, be deemed a common carrier.
47 U.S.C. § 153(11)

6

tariffs. The *Native American Telecom* court found that NAT was "a tribally owned limited liability company organized under the laws of South Dakota" and "provide[d] telecommunications service on the Crow Creek Reservation subject to the tribe's laws." *Native American Telecom*, 2010 WL 4973319, at *1. *See American Towers*, 781 F.3d at 702 (finding that the lessor-owners of wireless service towers are not "common carriers" but that the lessee-service providers are). Here, nothing in the record suggests, and the parties do not argue, that the OSTUC provides telecommunications services. Therefore, 47 U.S.C. § 207 does not apply to the facts presented and does not bar this Court's jurisdiction to grant AT&T's requested relief in Count One of the First Amended Complaint. Therefore, the Tribe's motion to dismiss as to Count One of the First Amended Complaint is denied.

Alternatively, the Tribe asserts that the doctrines of claim preclusion and issue preclusion foreclose this Court's jurisdiction.[3] The Court disagrees. "Claim preclusion, or res judicata, 'bars relitigation of the same claim between parties or their privies where a *final judgment* has been rendered upon the merits by a court of competent jurisdiction.'" *Plough By and Through Plough v. West Des Moines Community School Dist.*, 70 F.3d 512, 517 (8th Cir. 1995) (quoting *Smith v. Updegraff*, 744 F.2d 1354, 1362 (8th Cir. 1984)) (emphasis added). *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under res judicata, a *final judgment* on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.") (emphasis added). The parties do not dispute that the FCC action is pending. Thus, res judicata and collateral estoppel do not apply since there is no final decision from the FCC that would preclude the claim or issues from being before the Court.

As to the dispute with NAT-PR, AT&T argues in its brief that that dispute is not the subject of this declaratory judgment action. Throughout AT&T's First Amended Complaint, however, are

---

[3] Res judicata, while sometimes discussed as encompassing both claim preclusion and issue preclusion, is distinct from the latter. *Krull v. Jones*, 46 F. Supp. 2d 997, 1000 (D.S.D 1999). Issue preclusion, often referred to as collateral estoppel, forecloses a party from relitigating discrete issues previously decided by a tribunal as opposed to a claim in its entirety. *See id.* (quoting *Plough By and Through Plough v. West Des Moines Community School Dist.*, 70 F.3d 512, 515 (8th Cir. 1995)). *See Allen v. McCurry*, 449 U.S. 90, 94 (1980) ("Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude litigation of the issue in a suit on a different cause of action involving a party to the first case.").

7

allegations as to NAT-PR's status as a "traffic pumping"[4] network and that its access charges are inconsistent with federal law. Related to those allegations, Count Two of AT&T's First Amended Complaint seeks a declaration from this Court that the OSTUC is without jurisdiction to enforce the September 24 Order. Specifically, AT&T requests that, insofar as the Order pertains to the AT&T and NAT-PR dispute, the OSTUC is without jurisdiction to enforce it. Granting AT&T's declaratory relief on this point, however, would be tantamount to invalidating NAT-PR's access charges. AT&T asks this Court to invalidate the Tribe's jurisdiction over the NAT-PR dispute, claiming that the tariffs imposed upon it by NAT-PR are invalid. As discussed, however, AT&T has already selected its forum for the dispute with NAT-PR: the FCC. As such, by operation of 47 U.S.C. § 207, this Court is without jurisdiction to enter the requested relief insofar as this action implicates NAT-PR and its access charges and the Tribe's motion to dismiss will be granted as to Count Two of the First Amended Complaint.

While the arguments of the parties have been addressed in the foregoing discussion, the matter is not dispensed with. There remain issues to be addressed pertaining to the Tribe's regulatory authority over nonmember activity on reservation land.

## II. DOES THE TRIBE HAVE INHERENT AUTHORITY OVER TELECOMMUNICATIONS SERVICES ON THE RESERVATION?

Notions of tribal sovereignty and self-government counsel in favor of allowing the Tribe to first determine its own jurisdiction on the present matter. While the parties do not raise the question of the applicability of tribal exhaustion doctrine, the Court finds it to be a necessary consideration and thus raises it *sua sponte*. Similar to the facts of *Wynne*, the Tribe "points to no federal statute or treaty specifically authorizing tribal jurisdiction in this case so any tribal jurisdiction 'must arise from [the Oglala Sioux Tribe's] retained or inherent sovereignty.'" *Wynne*, 2015 WL 4644983, at *2 (quoting *Belcourt Pub. Sch. Dist. v. Davis*, 786 F.3d 653, 657 (8th Cir. 2015)) (alteration in original).

---

[4] "Traffic pumping" is a business arrangement "whereby businesses [such as NAT-PR] generate high volumes of calls by providing conference calling and similar services to others at little or no charge and [the business] pays the [customers] kickbacks from the high levels of tariffs collected." *Tekstar Communications, Inc. v. Sprint Communications Co., L.P.*, Civil No. 08–1130 (JNE/RLE), 2009 WL 2155930, at * 1 (D. Minn. July 15, 2009).

The Tribe's retained or inherent sovereignty, however, does not grant it any type of automatic jurisdiction over nonmembers. Instead, in order to have jurisdiction over nonmember activity on reservation land, one of two exceptions must be satisfied: one, a tribe has jurisdiction over a nonmember that enters a consensual relationship with a tribe or its members; or two, a nonmember's activity "directly affects the tribe's political integrity, economic security, health, or welfare." *Strate v. A-1 Contractors*, 520 U.S. 438, 446 (1997) (summarizing the test for tribal jurisdiction over nonmember activity first explained in *Montana v. U.S.*, 450 U.S. 544 (1981)).

The record makes clear that AT&T has no physical presence on the Tribe's reservation land. AT&T's First Amended Complaint specifically alleges that AT&T is not a tribal member, is not located on the Reservation, maintains no equipment on the reservation, and has no physical presence. First Amended Complaint at 3. But under *Montana*, physical location is merely relevant, not dispositive. *See Wynne*, 2015 WL 4644983, at *3 (citing *Attorney's Process & Investigation Servs. Inc. v. Sac & Fox Tribe of Miss. in Iowa*, 609 F.3d 927, 937 (8th Cir. 2010)). Certainly a telecommunications company can enter a consensual relationship with a tribe or a tribal member or engage in an activity on reservation land without being physically present there. After all, the focal point of *Montana* analysis is the location of the nonmember's activity or conduct, not the location of the nonmember him or herself. *Id.* The Eighth Circuit recently held as much. In *DISH Network Service, LLC v. Laducer*, 725 F.3d 877, 884 (8th Cir. 2013), the Eighth Circuit observed that while an alleged tort of abuse of process may have taken place off reservation land, the harm of the tort would still be felt on the reservation since the tort was related to a contract DISH had with a person residing on the reservation. Because of the relationship with the reservation, the Eighth Circuit found that tribal jurisdiction was not plainly lacking and the tribal court itself should be allowed to decide the question of its jurisdiction for itself in the first instance. *Id.*

In the present case, no tort is being alleged by AT&T, but, as was found in *Wynne*, "the regulations proposed by the OSTUC are aimed at protecting consumers on [the Reservation]." *Wynne*, 2015 WL 4644983, at *4. Moreover, in its First Amended Complaint, AT&T alleges that it "provides service to any customers located on the Reservation through Service Agreements or other

9

contracts that are governed by federal and/or State law, not tribal law." First Amended Complaint at 9. Thus, just as in *DISH Network*, AT&T's contact with the reservation is directly related to contracts with Reservation residents. That the contracts are governed by something other than tribal law is not dispositive. In addition, while the Order complained of by AT&T is specifically directed at it, the underlying regulations relied upon by the OSTUC in issuing the Order would be applicable to any service similar to AT&T. *See id.* at 3 ("[OSTUC] named ten utility providers in the notice including AT&T."). Furthermore, the regulations the OSTUC is attempting to enforce directly relate to activity that AT&T has undertaken on the Reservation land. Thus, the *Montana* test does have more bearing on the facts presented here than in *DISH Network* since, unlike in *DISH Network*, the activity of AT&T itself, and not just the alleged harm of an off-reservation tort, is taking place on reservation land. As the *Wynne* court recently stated, accepting the argument that physical presence on reservation land is dispositive "would exempt from tribal jurisdiction any business that had no physical presence on a reservation regardless of the degree of contact and involvement it had with tribal members or the impact on the tribe's welfare." *Wynne*, 2015 WL 4644983, at *3. A holding dependent upon physical presence would also ignore the challenges that have come about concerning electronic communications and electronic transactions.

Physical location aside, AT&T itself alleges that it "provides intrastate and interstate long-distance services to less than five customers located on the Reservation." First Amended Complaint at 8. While the number of customers served by AT&T on the Reservation is low, that alone is not sufficient to hold that the *Montana* test is not met. The Eighth Circuit has found that a single customer is sufficient to grant a tribe jurisdiction. *See DISH Network*, 725 F.3d at 885. In addition, the Supreme Court's reasoning in *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 337-38 (2008), suggests that the degree of tribal regulation relative to the degree of connection the nonmember has with the Reservation is a further factor that a court may consider in assessing a tribal court's jurisdiction under *Montana*. "If some proportional degree of tribal regulation is appropriate based on a nonmember's connection to the reservation, then the propriety of the tribal regulations in this case is a question of proportion and not a question of jurisdiction." *Wynne*, 2015 WL 4644983, at *4. Thus, the Court finds that AT&T's connection to Oglala Sioux Tribal land is

sufficient for the tribe to at least be allowed to decide the extent of its jurisdiction in the first instance.

Finding that the Tribe has jurisdiction over matters concerning telecommunications on its own land, it must next be determined if AT&T may nonetheless seek relief in this Court. While tribal jurisdiction over nonmembers is limited, it has been recognized by the Supreme Court that "the Federal Government[] [has a] longstanding policy of encouraging tribal self-government." *Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 14 (1987). Given this policy, tribal exhaustion doctrine has been developed to require parties to first challenge tribal jurisdiction in tribal court before turning to United States District Court. *See Nevada v. Hicks*, 533 U.S. 553, 555-56 (2001) ("We believe that examination should be conducted in the first instance in the Tribal Court itself. Our cases have often recognized that Congress is committed to a policy of supporting tribal self-government and self-determination. That policy favors a rule that will provide the forum whose jurisdiction is being challenged the first opportunity to evaluate the factual and legal bases for the challenge.").

Exhaustion of tribal remedies thus developed as "a prudential exhaustion rule, in deference to the capacity of tribal courts 'to explain to the parties the precise basis for accepting jurisdiction.'" *Strate*, 520 U.S. at 450 (quoting *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 857 (1985)). The Supreme Court, however, has developed four exceptions to tribal exhaustion doctrine: (1) where "tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith;" (2) where the case "is patently violative of express jurisdictional prohibitions;"[5] and (3) "where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction." *Nat'l Farmers*, 471 U.S. at 856 n. 21. The fourth exception was recognized in *Strate*, where the Supreme Court held that when "it is plain that [tribal jurisdiction does not exist], the otherwise applicable exhaustion requirement must give way, for it would serve no purpose other than delay." *Strate*, 520 U.S. at 459 n. 14 (internal citation omitted). Under *Strate*, exhaustion is not required when tribal jurisdiction would be "frivolous or obviously invalid under clearly established law." *DISH Network*, 725 F.3d at 883.

---

[5] This exhaustion exception is discussed more thoroughly in Part III., *infra*.

11

Since the Court raises the issue of tribal exhaustion *sua sponte*, the record relevant to the issue is limited. Nevertheless, AT&T's First Amended Complaint and arguments in its brief make clear that it requests this Court to rule that the OSTUC has no jurisdiction over it generally. Given the above discussion and unresolved factual questions, however, the Court declines to rule that the Tribe is plainly lacking jurisdiction over AT&T sufficient to excuse it from the requirement of tribal exhaustion in all events. AT&T's contact with the Tribe on reservation land, while limited, is sufficient to grant the Tribe the opportunity to first determine its own jurisdiction and the Court finds that AT&T must first exhaust its tribal remedies before proceeding in federal court. *See Burlington Northern R. Co. v. Crow Tribal Council*, 940 F.2d 1239, 1245 (9th Cir. 1991) ("The requirement of exhaustion of tribal remedies is not discretionary; it is mandatory. The district court had no discretion to relieve [Plaintiff] from exhausting tribal remedies prior to proceeding in federal court."); *Nat'l Farmers*, 471 U.S. at 857 (finding that "exhaustion is required before such a claim may be entertained by a federal court."). That AT&T is contesting the jurisdiction of a tribal administrative agency as opposed to tribal court is of no consequence and exhaustion is still a required prerequisite to this Court's jurisdiction. *Reservation Telephone Cooperative v. Three Affiliated Tribes of the Fort Berthold Reservation*, 76 F.3d 181, 186 (8th Cir. 1996) ("We hold that *Duncan Energy [Company v. Three Affiliated Tribes of the Fort Berthold Reservation*, 27 F.3d 1294 (8th Cir. 1994), *rehearing en banc denied*,] controls this action and requires the [Plaintiffs] to exhaust the *administrative* and adjudicative remedies outlined in the Tribal Tax Code before presenting their preemption arguments to a federal court.") (emphasis added); *Burlington Northern*, 940 F.2d at 1246 ("[Plaintiff] must exhaust [] tribal remedies, both *administrative* and judicial, before federal court adjudication of the [] claims may proceed.") (emphasis added).

### III. IS TRIBAL JURISDICTION PREEMPTED BY FEDERAL LAW?

AT&T argues in its brief and claims in its First Amended Complaint that federal law preempts tribal governance over the issues presented. Specifically, AT&T asserts that "[t]he Federal Communications Act gives the FCC exclusive jurisdiction over the provision of interstate services, including wireline long distance services." First Amended Complaint at 4 (citation omitted). The argument targets the second *Nat'l Farmers* exhaustion exception and AT&T seems to suggest that

12

any tribal regulation of telecommunications is preempted by existing federal law, thus precluding tribal jurisdiction in any way. *See* AT&T's brief in opposition at 5 ("AT&T's federal claim here is not limited to Defendants' attempt to exercise jurisdiction over charges imposed by NAT-PR under its federal tariff, but extends to Defendants' attempt to exercise jurisdiction over AT&T *in any way*.") (emphasis added). The role tribes may serve in telecommunications regulation, however, is not as certain as the requested relief suggests.

"At the turn of this century, the FCC acknowledged that Native American tribes have a role in ensuring that 'all Americans, in all regions of the United States, have the opportunity to access telecommunications and information services' and that 'certain communities, particularly Indian reservations and Tribal lands, remain underserved[.]'" *Wynne*, 2015 WL 4644983, at *5 (quoting *In the Matter of Statement of Policy on Establishing a Government-to-Government Relationship with Indian Tribes*, 16 FCC Rcd 4078 at *1 (FCC 2000). Since then the FCC has reaffirmed the roles of tribes in telecommunications. In *In the Matter of Western Wireless Corporation*, 16 FCC Rcd 18145 (FCC 2001), the FCC determined that an agreement between a wireless service, Western Wireless, and the Oglala Sioux Tribe satisfied the first prong of the *Montana* test and allowed the tribe, as opposed to the South Dakota Public Utilities Commission (SDPUC), to exercise jurisdiction over Western Wireless. Thus, while broad regulatory authority over communications law and policy has been entrusted to the FCC by Congress, the FCC has demonstrated a desire to allow tribes to regulate telecommunications insofar as it affects reservation land. As the FCC itself stated,

> [A]s an independent agency of the federal government, the Commission recognizes its own general trust relationship with, and responsibility to. (sic) federally-recognized Indian Tribes. The Commission also recognizes the rights of Indian Tribal governments to set their own communications priorities and goals for the welfare of their membership.

*In the Matter of Statement of Policy on Establishing a Government-to-Government Relationship with Indian Tribes*, 16 FCC Rcd 4078 at *2 (FCC 2000).

While 47 U.S.C. § 207 might appear to foreclose on tribal jurisdiction in this case, as discussed above, the OSTUC is not a common carrier. While a South Dakota District Court has

13

found "that Congress preempted tribal jurisdiction over claims brought under [47 U.S.C. § 207] by limiting jurisdiction over those claims to the FCC or federal courts and leaving 'no room for adjudication in any other forum . . . ,'" *Wynne*, 2015 WL 4644983, at *6 (quoting *Native American Telecom*, 2010 WL 4973319, at *5), AT&T itself disclaims 47 U.S.C. § 207's applicability here. Outside of the FCC's broad regulatory authority, however, which does not foreclose tribal jurisdiction, no other jurisdictional prohibition is pointed to by AT&T. "Instead, [AT&T] makes a general jurisdictional argument of the type the Eighth Circuit has distinguished from other express jurisdictional prohibitions." *Id.* at *7 (citing *Reservation Telephone Cooperative*, 76 F.3d at 185 (finding that the express jurisdictional prohibition exception in *Nat'l Farmers* "refers to specific prohibitions on designated tribal remedies or to prohibitions on a tribal forum's assertion of jurisdiction over a dispute" and not general prohibitions on tribal jurisdiction over broad matters)). The Court finds controlling the Eighth Circuit holding in *Reservation Telephone Cooperative*, 76 F.3d 181 (8th Cir. 1995). While there certainly exists telecommunications issues over which tribes lack jurisdiction, e.g., 47 U.S.C. § 207, no similar federal telecommunications law that this Court is aware of equally proscribes tribal jurisdiction generally as AT&T suggests. Thus, finding that the Tribe should be allowed to determine its own jurisdiction in the first instance, the Court finds that AT&T must first exhaust its tribal remedies before maintaining or proceeding on the federal action.

## IV. SHOULD THE FEDERAL ACTION BE DISMISSED OR STAYED?

Once it is decided that a tribe should be deferred to under tribal exhaustion doctrine, federal courts "should either dismiss th[e] case without prejudice for failure to exhaust tribal remedies, or should stay any proceedings until those remedies are exhausted." *Duncan Energy Co. v. Three Affiliated Tribes of Ft. Berthold Reservation*, 27 F.3d 1294, 1301 (8th Cir. 1994). Neither the Supreme Court nor the Eighth Circuit has established a test for district courts to apply when deciding whether to dismiss or stay a federal action in deference to tribes. *See Nat'l Farmers*, 471 U.S. at 857 (leaving dismissal or stay up to the trial court). While the Tribe has moved for a dismissal of the federal action, the Court finds that a stay would better promote judicial efficiency. If review of a tribal decision becomes necessary, a stay of the federal proceedings, as opposed to a dismissal, would allow for a more expedient review of that tribal decision. *See Iowa Mut.*, 480 U.S. at 19 (noting that a tribal

14

court's "determination of jurisdiction is ultimately subject to review" in federal court).

## CONCLUSION

While Plaintiff's action for declaratory judgment against Defendants may properly be maintained in federal court, Plaintiff need first exhaust its tribal remedies. Congress and the FCC have expressed a desire to promote tribal self-government. Against that longstanding policy, as well as Supreme Court and Eighth Circuit precedent, the Court finds that telecommunications regulation has become an important component for tribal self-government. Therefore, Defendants should be allowed to determine their jurisdiction over telecommunications regulation in the first instance. Upon exhausting available tribal remedies on this jurisdictional issue, Plaintiff's action may, if necessary, then continue in federal court with a lifting of the stay by Motion to the Court. Accordingly,

IT IS ORDERED:

1. That Count One of the First Amended Complaint is not dismissed and no ruling is made at this time on that request for declaratory and injunctive relief.

2. That Defendants' Motion to Dismiss what is now Count Two of the First Amended Complaint, that having been the original Complaint, is granted.

3. That this federal action is stayed until further Order of the Court.

4. That the parties shall advise the Court each three months from the date of this Order of the status of the proceedings in the Oglala Sioux Tribal Court.

Dated this 25th day of September, 2015.

BY THE COURT:

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, Clerk
By_____
      Deputy